# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| CHURCH MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| THE METROPOLITAN CHRISTIAN WORSHIP CENTER OF ST. LOUIS, | ) ) ) | **JURY TRIAL DEMANDED** |
| Serve: Raphael Green 3452 Potomac Ave. St. Louis, Missouri 63118, | ) ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff, Church Mutual Insurance Company, by and through undersigned counsel, pursuant to 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure and for its Complaint for Declaratory Judgment, states as follows:

### PARTIES

1. Church Mutual Insurance Company ("Church Mutual") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Merrill, Wisconsin.

2. Defendant The Metropolitan Christian Worship Center of St. Louis is a domestic nonprofit corporation, organized and existing under the laws of the State of Missouri, with its principal place of business in St. Louis, Missouri.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. §1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of costs, interest and attorneys' fees, and there exists complete diversity of citizenship.

4. Venue is proper in the Eastern District of Missouri under 28 U.S.C. §1391 because Defendant resides in this District, the events and omissions giving rise to the claim occurred in this District and the property involved is situated in this District.

## GENERAL ALLEGATIONS

5. Plaintiff brings this action seeking an interpretation of the insurance policy described below and a declaration of the rights and obligations of the parties thereunder.

6. An actual justiciable controversy exists between Plaintiff and Defendant and litigation as to this controversy is imminent and inevitable. Resolution of matters raised in this action will dispose of all issues between the parties under the insurance policy issued by Plaintiff.

7. All necessary and proper parties are before the Court for the matters in controversy, and there is no other litigation between the parties concerning their rights and obligations under the insurance policy issued by Plaintiff.

8. Plaintiff has complied with all conditions precedent under the insurance policy and has no other adequate remedy at law.

## PLAINTIFF'S INSURANCE POLICY

9. Plaintiff issued an actual cash value policy of insurance, policy number 0119510-02-857145, dated January 17, 2016 to January 17, 2019 (the "actual cash value policy"), to Defendant for the property located at 3452 Potomac Street, St. Louis, Missouri 63118 (the

"subject property"). *See* Exhibit 1, a true and accurate copy of the actual cash value policy, attached hereto and incorporated herein.

### GROUNDS FOR DECLARATORY JUDGMENT

10. On May 10, 2017, Defendant submitted a claim to Plaintiff under the actual cash value policy alleging that on or about February 28, 2017, the subject property sustained damage due to a storm.

11. Church Mutual assigned the matter claim number 1316847.

12. As part of its investigation, Church Mutual assigned Nixon & Company, Inc. as the adjuster to inspect the property.

13. Nixon & Company determined that the subject property did sustain some storm related damages in the form of wind damage to the roof and gutters and prepared an estimate for those damages containing a replacement cost value of $29,822.45.

14. Pursuant to the actual cash value policy, in September 2017, Church Mutual issued payment to Defendant for the covered damages to the subject property in the amount of $20,209.39, which constituted the actual cash value of the loss after subtracting non-recoverable depreciation and the deductible.

15. Defendant accepted the check from Church Mutual in the amount of $20,209.39 and deposited those proceeds into its bank account.

16. Church Mutual also assigned an engineer, Joseph Kraus of EFI Global, to inspect the subject property.

17. Mr. Kraus' inspection revealed that the interior moisture staining was due to age related deterioration of the flat roofs and wall/roof flashings, as well as deteriorated sealant application repairs along the roof/wall interfaces above the leaks

18. As the water did not enter through a storm created opening and the staining was not the result of storm activity, Church Mutual denied the portion of Defendant's claim for interior moisture damages in October 2017.

19. In July 2018, Defendant for the first time indicated a desire to proceed with an additional claim with Church Mutual under claim number 1316847.

20. On October 12, 2018, Defendant submitted a Sworn Statement in Proof of Loss to Plaintiff, thereby making a formal demand under oath for payment under the actual cash value policy for $359,444.08. *See* Exhibit 2, a true and accurate copy of Defendant's Sworn Statement in Proof of Loss, attached hereto and incorporated herein.

21. Defendant's Sworn Statement in Proof of Loss was submitted along with and specifically referred to an estimate from Alltex General Contracting, LLC from Crandall, Texas. *See* Exhibit 3, a true and accurate copy of the estimate from Alltex General Contracting, LLC, attached hereto and incorporated herein.

22. The estimate from Alltex General Contracting, LLC provides a subtotal of $239,629.30, overhead of 25% in the amount of $59,907.39 and profit of 25% in the amount $59,907.39, for a total replacement cost value of $359,444.08.

23. The Alltex General Contracting, LLC estimate provides a replacement cost value of $359,444.08, but does not account for any depreciation or provide an actual cash value figure.

24. On March 12, 2019, Defendant's representative, Theodore Boldin, appeared for an Examination Under Oath and provided sworn testimony under oath on matters pertaining to Defendant's claim with Plaintiff.

25. Mr. Boldin made the following representations on behalf of Defendant during his Examination Under Oath:

    a.    Defendant had the roof replaced on the subject property in August 2006;

    b.    From the time of the roof replacement, through the submission of the present claim, roof leaks and interior moisture damages were an ongoing and repeated problem at the subject property;

    c.    Defendant retained various contractors to perform numerous temporary repairs but the leaks and damages continued;

    d.    None of the incidents between August 2006 and February 2017 were reported to Plaintiff and Plaintiff had no knowledge of them, no opportunity to take care of the problems or to decide whether to stay on the risk;

    e.    Defendant ultimately submitted a claim to Plaintiff because it could no longer keep up with the leaks and damages and the band-aids were not working anymore; and

    f.    Although February 28, 2017 was selected as the date of loss, all of the damages did not occur on February 28, 2017 and it is not possible to determine when the complained of damages occurred.

26.    Mr. Boldin's testimony establishes that rather than being from a single occurrence in February 2017, the alleged damages were the result of continuous problems that Defendant had attempted to address on its own for years.

27.    During its investigation of the claim, Plaintiff requested on numerous occasions that Defendant produce documents and records in support of its claim.

28.    Despite these repeated requests, Defendant failed to provide such documents and records to Plaintiff during the claim.

29. One or more of the following provisions, *inter alia*, of the actual cash value policy apply and bar or may bar coverage in this case for Defendant:

PROPERTY COVERAGE PART
DECLARATIONS PAGE

\*\*\*

| | |
|---|---|
| COVERAGE: | BUILDING |
| LIMIT OF INSURANCE: | $2,727,000 |
| COINSURANCE PERCENT: | 80% |
| COVERED CAUSE OF LOSS: | SPECIAL |
| VALUATION: | ACTUAL CASH VALUE |

\*\*\*

COMMON POLICY CONDITIONS

\*\*\*

C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

\*\*\*

PROPERTY CONDITIONS

\*\*\*

A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you relating to it. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

6

\*\*\*

C.  LOSS CONDITIONS

\*\*\*

3.  Duties in the Event of Loss or Damage.

    a.  You must see that the following are done in the event of loss or damage to Covered Property:

        (1)  Notify the police if a law may have been broken.

        (2)  Give us prompt notice of the loss or damage.  Include a description of the property involved.

        (3)  As soon as possible, give us a description of how, when, and where the loss or damage occurred.

        (4)  Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim.  This will not increase the Limit of Insurance.  However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.  Also, if feasible, set the damaged property aside and in the best possible order for examination.

        (5)  At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values, and amount of loss claimed.

        (6)  As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

            Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

        (7)  Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

    (8)    Cooperate with us in the investigation or settlement of the claim.

2. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

\*\*\*

## CAUSES OF LOSS - SPECIAL FORM

\*\*\*

B.    EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\*\*\*

    h.    "Fungus," Wet Rot, Dry Rot and Bacteria.

        Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria.

        But if "fungus," wet or dry rot or bacteria results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."

        This exclusion does not apply:

        1.    When "fungus," wet or dry rot or bacteria results from fire or lightning; or

        2.    To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungus," Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

        Exclusions B.1.a. through B.1.h. apply whether or not the loss event results in widespread damage or affects a substantial area.

***

2.    We will not pay for loss or damage caused by or resulting from any of the following:

***

    d.    (1)    Wear and tear;

        (2)    Rust, or other corrosion, decay, deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself;

***

        (4)    Settling, cracking, shrinking, or expansion;

***

    f.    Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

***

3.    We will not pay for loss or damage caused by or resulting from any of the following 3. a. through 3. c. but if an excluded cause of loss that is listed in 3. a. through 3. c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

***

    c.    Faulty, inadequate, or defective:

***

        (2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

9

  (3) Materials used in repair, construction, renovation, or remodeling; or

  (4) Maintenance;

of part or all of any property on or off the described premises.

C. LIMITATIONS

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited to this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

***

c. The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand, or dust, whether driven by wind or not, unless:

  (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand, or dust enters; or

***

30. Based on its investigation of the facts and circumstances surrounding the loss and the claim, Plaintiff reasonably concluded that any claimed damage to the subject property is not related to any storms or a Covered Cause of Loss, but rather is attributable to wear, tear, decay, deterioration, settling, cracking, shrinking or expansion, continuous or repeated seepage or leakage of water, faulty, inadequate or defective workmanship, repair, construction, materials or maintenance.

31. As the actual cash value policy's exclusions and limitations preclude coverage for such damages, no coverage exists for Defendant's claimed damages.

32. Based on its investigation of the facts and circumstances surrounding the loss and the claim, Plaintiff reasonably concluded that Defendant failed to comply with the conditions of the actual cash value policy by concealing and/or misrepresenting material facts concerning the Coverage Part, the Covered Property, its interest in the Covered Property and/or a claim under the Coverage Part, including, but not limited to, presenting a replacement cost claim and seeking payment for replacement cost sums when all that is available is actual cash value under the actual cash value policy and when the actual cash value has already been paid by Plaintiff and accepted by Defendant and other related matters.

33. Due to this conduct, Defendant is barred from recovery under the actual cash value policy and no coverage exists for Defendant's claimed damages.

34. Based on its investigation of the facts and circumstances surrounding the loss and the claim, Plaintiff reasonably concluded that Defendant failed to cooperate and comply with its duties after a loss as required under the actual cash value policy, including, but not limited to, failing to provide prompt notice of the loss, failing to take all reasonable steps to protect the subject property from further damage, failing to produce requested documents and records in support of the claim, failing to cooperate with Plaintiff in the investigation of the claim and other related matters.

35. Defendant's failures to comply with its duties have prejudiced Plaintiff's rights under the actual cash value policy and, as such, Defendant is barred from recovery under the actual cash value policy and no coverage exists for Defendant's claimed damages.

36. Plaintiff has sustained damage as a result of Defendant's concealments, misrepresentations and/or breaches of the actual cash value policy conditions in that it has incurred substantial costs and expenses for claim response, investigation, adjusting and

evaluating and attorneys' fees, which continue to accrue.  Plaintiff is entitled to recoup and/or recover the amount of these costs, expenses and attorneys' fees from Defendant.

WHEREFORE, Plaintiff Church Mutual Insurance Company respectfully requests that this Court: (1) determine the rights and obligations of the parties under the actual cash value policy and enter a judgment construing the actual cash value policy including applicable coverage provisions, exclusions, limitations and conditions thereunder in favor of Plaintiff; (2) declare that Plaintiff is entitled to recover the amount of costs and expenses incurred in investigation, including adjustment and evaluation of the claim, and attorneys' fees; and (3) for any and all such further relief that this Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Robert W. Cockerham
Robert W. Cockerham #31984
COCKERHAM & ASSOCIATES, L.L.C.
10803 Olive Blvd.
St. Louis, MO 63141
314-621-3900
Fax:  314-621-3903
rcockerham@cockerhamlaw.com

Attorneys for Plaintiff Church Mutual Insurance Company