**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHURCH MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-CV-00903-SNLJ |
| | ) | |
| THE METROPOLITAN CHRISTIAN | ) | |
| WORSHIP CENTER OF ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, Church Mutual Insurance Company, by and through undersigned counsel, and for its Memorandum in Support of its Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7-4.01, states as follows:

### PRELIMINARY STATEMENT

Plaintiff Church Mutual Insurance Company ("Church Mutual") issued an actual cash value insurance policy to Defendant The Metropolitan Christian Worship Center of St. Louis ("Metro Christian"), policy number 0119510-02-857145, dated January 17, 2016 to January 17, 2019 (the "policy"), for the property located at 3452 Potomac Street, St. Louis, Missouri 63118 (the "Church").

On May 10, 2017, Metro Christian reported a wind claim involving the roof of the Church with an alleged date of loss of February 28, 2017.  While the claim made on May

10, 2017 constituted the first notice Church Mutual received concerning the condition of the roof at the Church, Metro Christian had been experiencing persistent and ongoing problems with leaks and water damage from the time the roof was replaced in August 2006.  While Metro Christian had been performing temporary repairs that it referred to as "bandaids" and "patching," no notice of the loss or damage was provided to Church Mutual.

As part of the claim, Church Mutual discovered some covered wind related damages to the roof and gutters and issued payment for the actual cash value of the damage to Metro Christian, which was accepted and deposited.  Subsequently, on its proof of loss and during its Examination Under Oath, Metro Christian, through its corporate representative Theodore Boldin, Jr., claimed a date of loss of February 28, 2017, and made demand for the replacement cost amount of $359,444.08, based on an estimate from Alltex General Contracting, LLC that does not account for any deterioration, depreciation or obsolescence and also does not specify when or how the alleged damages occurred.

Church Mutual also requested that Metro Christian produce certain documents and records as part of its investigation into this claim.  However, Metro Christian admits that it failed to comply with these requests from Church Mutual.

Further, Church Mutual's investigation revealed that rather than being attributable to a covered cause of loss, the claimed damages are attributable to wear, tear, decay, deterioration, settling, cracking, shrinking or expansion, continuous or repeated seepage

2

or leakage of water, and/or faulty, inadequate or defective workmanship, repair, construction, materials or maintenance.

The undisputed evidence establishes that Metro Christian breached the policy by committing material misrepresentations by demanding replacement cost sums knowing that only actual cash value was available under the policy.  Metro Christian also breached the policy by failing to cooperate with Church Mutual by not providing prompt notice of the loss or damage, failing to take all reasonable steps to protect the Church from further damage and failing to produce requested documents and records.  Further, the claimed damages are excluded by the express and unambiguous terms of the policy.  Consequently, the policy is void, there is no coverage for any claimed damages and summary judgment should be entered in Church Mutual's favor.

## LEGAL STANDARD

Summary judgment should be granted when "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001). Moreover, "Rule 56(c) mandates the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in his favor.  *City of Mt.*

3

*Pleasant, Iowa v. Associated Elec. Co-op.*, 838 F.2d 268, 273 (8th Cir. 1988).  Once this burden is discharged, if the record bears out that no genuine dispute exists, the burden shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).  After the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists.  Fed.R.Civ.P. 56(e).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  Indeed, it must be established that there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for him.  *Anderson*, 477 U.S. at 249; *Catrett*, 477 U.S. at 324.

**ARGUMENT**

## I.        Principles of Contract Interpretation

In interpreting an insurance contract, courts read the policy as a whole to determine the parties' intent.  *Dibben v. Shelter Ins. Co*., 261 S.W.3d 553, 556 (Mo. Ct. App. 2008) (*citing Missouri Employers Mutual Ins. Co. v. Nichols*, 149 S.W.3d 617, 625 (Mo. Ct. App. 2004)).  Courts then give effect to this intent by enforcing the contract as written, according to the plain and ordinary meaning of its language.  *Id.* (*citing Missouri Employers Mutual Ins. Co*., 149 S.W.3d at 625).  Words or phrases in an insurance contract must be interpreted in the context of the policy as a whole and not considered in isolation.  *Long v. Shelter Ins. Co.*, 351 S.W.3d 692, 696 (Mo. Ct. App. 2011) (*quoting*

4

*Haggard Hauling and Rigging Co. v. Stonewall Ins. Co*., 852 S.W.2d 396, 399 (Mo. Ct. App. 1993)).  Furthermore, in interpreting an insurance contract, courts endeavor to give each provision a reasonable meaning and avoid an interpretation that renders any provision useless or redundant.  *Dibben,* 261 S.W.3d at 556. (*citing Wildflower Community Association, Inc. v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo. Ct. App. 2000)).

"Definitions, exclusions, conditions, and endorsements are necessary provisions in insurance policies.  If they are clear and unambiguous within the context of the policy as a whole, they are enforceable."  *Yager v. Shelter Gen. Ins. Co*., 460 S.W.3d 68, 71 (Mo. Ct. App. 2015) (*quoting Allen v. Continental W. Ins. Co*., 436 S.W.3d 548, 553-54 (Mo. banc 2014)).

## II.     There is no coverage for Metro Christian's claims because it committed material misrepresentations concerning its claim for coverage.

Metro Christian has claimed repeatedly under oath, including on the Sworn Statement in Proof of Loss, as well as during the Examination Under Oath, that it is seeking to be paid the replacement cost sum of $359,444.08, claiming a date of loss of February 28, 2017, even though Metro Christian knows it has an actual cash value policy. Metro Christian's demand for payment under the policy for sums to which it is not entitled constitutes a misrepresentation of a material fact concerning a claim, voiding the policy and precluding any coverage.

### A.     Material misrepresentations committed by an insured during the claim provide a sufficient basis for voiding an insurance policy.

Misrepresentation provisions providing the policy is void if an insured misrepresents a material fact concerning a claim, such as the one contained in Metro

5

Christian's policy, have been consistently enforced in Missouri and repeatedly upheld as a justification for voiding the entire policy and denying coverage for all claims being made when an insured commits a material misrepresentation in the claim as to a portion of the loss. *Childers v. State Farm Fire & Cas. Co.*, 799 S.W.2d 138, 141 (Mo. Ct. App. 1990); *CM Vantage Specialty Ins. Co. v. Nephrite Fund 1, LLC*, 2020 WL 805848, *12-13 (E.D. Mo. 2020).

The Eighth Circuit in *Cedar Hill Hardware* rejected the insured's argument that an insurer must prove the elements of fraud, including intent to deceive and reliance, to void a policy where the policy provides it is rendered void by a misrepresentation or concealment. *Cedar Hill Hardware and Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 346 (8th Cir. 2009). *See also Neidenbach v. Amica Mut. Ins. Co*., 96 F.Supp.3d 925, 930 (E.D. Mo. 2015) ("[D]espite the reference to the term "fraud" in most misrepresentation clauses, the insurer is not required to prove the elements of fraud to avoid coverage if the policy language also indicates, as here, that the policy is rendered void for intentional concealment or misrepresentation of a material fact."). Thus, even if the representations are innocently made, the insurer may still void the insurance policy. *Dixon v. Business Men's Assur. Co. of Am.,* 285 S.W.2d 619, 625 (Mo. 1955).

In *Scott*, the insured submitted a proof of loss to its insurer claiming a loss of $93,077.19 in personal property. *Liberty Mut. Fire Ins. Co. v. Scott*, 486 F.3d 418, 420 (8th Cir. 2007). However, just a year before, the insured filed a petition for bankruptcy declaring she owned only $7,340 in personal property. *Id*. The insured's policy stated that the insurer provided no coverage if the insured misrepresented or concealed any

material fact or circumstance.  *Id*.  Accordingly, this Court found, and the Eighth Circuit affirmed, that the insured's misrepresentation as to her property in her proof of loss voided coverage under her policy.  *Id*. at 423.

See also *Neidenbach v. Amica Mut. Ins. Co*., 96 F.Supp.3d 925 (E.D. Mo. 2015) (Summary judgment entered by this Court against the insureds and in favor of the insurer because the insureds misrepresented material facts and circumstances concerning the nature and extent of claimed losses and damages where they sought payments of $262,500 for personal property and $375,000 for the dwelling after claiming only $7,000 and $300,000, respectively, in bankruptcy); *Nephrite Fund 1, LLC*, 2020 WL 805848 at *12-13 (Summary judgment entered by this Court finding that policy is void ab initio because insured made misrepresentations in its claim for coverage by claiming repairs and lost rents for an apartment unit that was vacant and gutted prior to the fire); *Santizo v. Allstate Property & Cas. Ins*. Co., 2010 WL 2735649 (E.D. Mo. 2010) (Insurer's motion for summary judgment granted where insured violated concealment or misrepresentation provision by claiming $49,765.82 in contents one year after claiming only $2,810 in bankruptcy).

### B.    Metro Christian is not entitled to a replacement cost payment and has not presented evidence of the actual cash value.

The policy issued by Church Mutual to Metro Christian for the Church, and in effect on the purported date of loss, is an actual cash value policy, providing a valuation of actual cash value.  SOF ¶¶3 & 38.  Specifically, the Property Coverage Part Declarations Page expressly provides the following:

VALUATION:        ACTUAL CASH VALUE

SOF ¶89.

The Loss Payment Condition of the policy provides that the value of damaged property is determined in accordance with the Valuation Condition.  Pursuant to the Valuation Condition of the policy, when "Actual Cash Value" is shown on the Declarations Page, the value is determined at "Actual Cash Value," which is defined as "the amount it would cost to repair or replace Covered Property with material of comparable kind and quality, **less allowance for deterioration and depreciation, including obsolescence**."  SOF ¶89.

Metro Christian was provided with the correct insurance that it asked for and for which it paid a premium, and it never requested that the policy be changed to a valuation based on replacement cost.  SOF ¶¶39 & 41.  Pursuant to the policy, Metro Christian is not entitled to a replacement cost payment, and it has failed to present evidence of the actual cash value of the loss.[1]  SOF ¶¶66-67.

**C.     Church Mutual already issued payment for the actual cash value of the covered damages, which payment was accepted by Metro Christian.**

After being advised of the alleged February 28, 2017 loss on May 10, 2017, Church Mutual assigned Nixon and Company, Inc. as the adjuster for this claim, claim

_____

[1] The fact that only actual cash value is available, which Metro Christian knows, is confirmed by a prior claim Metro Christian made under the policy with respect to its HVAC units, as that claim was adjusted and paid on an actual cash value basis, with Metro Christian receiving an actual cash value payment after subtracting non-recoverable depreciation and the deductible.  SOF ¶¶94-96.  Metro Christian also acknowledged a prior loss involving the boiler at the Church that was paid on an actual cash value basis as well.  SOF ¶97.

8

number 1316847.  SOF ¶43.  The investigation revealed covered wind damage to the roof and gutters, and as the policy provided actual cash value coverage, Church Mutual issued an actual cash value payment based on Nixon and Company, Inc.'s estimate for the covered damages.  SOF ¶¶45-46 & 49.  Specifically, the replacement cost value of the covered damage was $29,822.45, less non-recoverable depreciation of $8,613.03 and the deductible of $1,000, resulting in an actual cash value payment of $20,209.39.  SOF ¶47.  The actual cash value payment made by Church Mutual on September 20, 2017 was accepted, cashed and deposited by Metro Christian.  SOF ¶¶45 & 48.

**D.     Metro Christian has knowingly presented a claim for replacement cost coverage to Church Mutual claiming a date of loss of February 28, 2017.**

After Metro Christian advised that it sought to proceed with an additional claim, Church Mutual requested that it complete, notarize and return a proof of loss and submit to an Examination Under Oath pursuant to the policy.  SOF ¶¶59-61.  Subsequently, Metro Christian submitted a Sworn Statement in Proof of Loss, along with an estimate from Alltex General Contracting, LLC, on which it intended Church Mutual to rely, seeking payment under the policy in the amount of $359,444.08.  SOF ¶¶62-63.

Metro Christian committed a misrepresentation in the claim by only presenting a replacement cost claim to Church Mutual, despite the fact that its policy only provides coverage for actual cash value.  SOF ¶¶40 & 63-67.  The Alltex General Contracting, LLC estimate provides a line item total of $232,144.72, material sales tax of $7,484.58, overhead at 25% of $59,907.39 and profit at 25% of $59,907.39, for the total replacement cost amount of $359,444.08, and this is the amount for which Metro Christian is making

9

a claim to Church Mutual.  SOF ¶¶64-65.  The estimate submitted and relied on by Metro Christian is to repair the alleged damage to the roof, the downspouts, the gutters and the leaks, but does not account for any deterioration, depreciation or obsolescence and does not provide an actual cash value.  SOF ¶¶66 & 68.  Metro Christian further admits that it does not have any evidence of the actual cash value.  SOF ¶42.

Additionally, although initially representing to Church Mutual that the date of loss is February 28, 2017, Metro Christian subsequently admitted that this was a misrepresentation.  SOF ¶29.  Specifically, Mr. Boldin admitted that all of the claimed damages, for which it is seeking to be paid in excess of $350,000, did not occur on February 28, 2017, that this was just the "best date" Metro Christian could come up with, and there is no way to determine when the damage actually occurred.  SOF ¶¶35-37. Additionally, Mr. Boldin admits that despite making a claim for the amount contained in the Alltex General Contracting, LLC estimate and intending for Church Mutual to rely on it, this repair bid is not just for damage that occurred on February 28, 2017.  SOF ¶¶63 & 69.

### E.    Conclusion

In this matter, the only claim presented by Metro Christian is for replacement cost coverage in the amount of $359,444.08 with a date of loss of February 28, 2017.  This is despite the fact that the policy only provides coverage for actual cash value and the claimed damages occurred over a period of more than ten years.  This constitutes a significant material misrepresentation in the claim with respect to items for which Metro Christian is seeking to be paid.  Thus, the policy is void and there is no coverage for the

10

damages claimed by Metro Christian because it failed to comply with the conditions of the policy by presenting a replacement cost claim with a claimed date of loss of February 28, 2017, and seeking payment for replacement cost sums, when it knows all that was available is actual cash value under the policy and it knows the actual cash value has already been paid by Church Mutual and accepted by Metro Christian.  SOF ¶91.

III.    **There is no coverage for Metro Christian's claims because it breached the Duties in the Event of Loss or Damage Condition of the policy in numerous respects.**

Metro Christian failed to cooperate, failed to provide prompt notice of the loss, failed to take all reasonable steps to protect the Church from further damage and failed produce requested documents and records in support of the claim.  As all of this conduct breached the policy and substantially prejudiced Church Mutual, there is no coverage for Metro Christian's claims under the policy.

A.    **Metro Christian failed to provide Church Mutual with prompt notice of the loss or damage.**

Metro Christian was obligated to provide Church Mutual with prompt notice of any loss or damage at the Church.  However, despite the fact that losses had been occurring and damages sustained for over a decade, Metro Christian did not advise Church Mutual of the situation involving the roof until May 10, 2017, alleging a single date of loss of February 28, 2017.  SOF ¶29.

"Conditions of an insurance policy which require that the insured give notice of a loss to the insurer within a certain time are valid and enforceable." *East Attucks Community Housing, Inc. v. Old Republic Sur. Co.*, 114 S.W.3d 311, 326 (Mo. Ct. App.

11

2003)(*citing Johnston v. Sweany*, 68 S.W.3d 398, 401 (Mo. banc 2002)).   Generally, when a policy does not specify a time period within which the insured is to give notice to the insurer, notice is to be given within a reasonable time.  *Travers v. Universal Fire & Cas. Ins. Co.*, 34 S.W.3d 156, 165 (Mo. Ct. App. 2000)(*citing* 4 COUCH, supra at §65:77; *Independent Fire Ins. v. NCNB Nat. Bank*, 517 So.2d 59, 65 (Fla. App. 1 Dist. 1987)).

The question of whether notice of loss was given within a reasonable time is usually a question for the jury, however, "where all reasonable persons would conclude that notice or proof was not given or made within [a reasonable] time, under all the circumstances, then it becomes a question of law for the court."  *Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 14 (Mo. banc. 1995); *Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1029 (8th Cir. 2003).  Although normally a question of fact, "the issue of prejudice may become a question of law if all reasonable persons would conclude the insured did not provide notice in a reasonable time."  *Church Mutual Ins. Co. v. Pleasant Green Missionary Baptist Church*, 2016 WL 4396169, *4 (E.D. Mo. 2016) (*quoting Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1029 (8th Cir. 2003)).

Once an insurer establishes that it was prejudiced by the insured's failure to comply with the notice provisions of the policy, it is permitted to deny coverage.  *Billings Mut. Ins. Co. v. Cameron Mut. Ins. Co.*, 229 S.W.3d 138, 143 (Mo. Ct. App. 2007)(*citing Weaver v. State Farm Mut. Auto. Ins. Co.*, 936 S.W.2d 818, 821 (Mo. banc 1997)).

Metro Christian is the sole owner of the Church and Mr. Boldin, its corporate representative, is in charge of building maintenance, including the roof.  SOF ¶¶4-5. During his Examination Under Oath, Mr. Boldin admitted that rather than being from a single occurrence on February 28, 2017, the claimed damages were the result of continuous problems at the Church that Metro Christian had attempted to address on its own over many years.  SOF ¶83.  There were ongoing problems with the roof at the Church leaking since the roof was replaced in August 2006 and well before the claim was made on February 28, 2017.  SOF ¶¶6-7.  During this timeframe, there were numerous and repeated instances of roof leaks leading to water intrusion and interior moisture damages that Metro Christian attempted to repair, either by itself or by hiring outside contractors.  SOF ¶¶8-21.  For years Metro Christian and its contractors would make repairs, which Mr. Boldin referred to as "bandaids," but the leaks would continue.  SOF ¶¶24-25.

Although Metro Christian had been experiencing ongoing problems with leaks for years, was aware of the leaks between August 2006 and February 28, 2017, and attempted to have those leaks repaired, none of the prior losses and damages during this timeframe were reported to Church Mutual.  SOF ¶¶22-23 & 26.  Metro Christian admits that February 28, 2017 was the best day it could come up with for a date of loss, all of the claimed damage did not occur on February 28, 2017, and it is impossible to determine what damage occurred on February 28, 2017, as opposed to any other prior date.  SOF ¶¶35-37.

Church Mutual suffered prejudice because, as it had no knowledge concerning what was occurring on the roof until after February 28, 2017, it had no knowledge of the losses and damage, no opportunity to take care of the problems and no ability to decide whether to stay on the risk.  SOF ¶¶27-28.  The prejudice suffered by Church Mutual is further confirmed by Metro Christian's admissions that it only finally decided to submit a claim with Church Mutual because it could no longer keep up with the leaks and repairs, its "bandaids" and "patching" were no longer working and the roof had now devolved into a "big job" costing hundreds of thousands of dollars.  SOF ¶¶33-34.  By the time it finally decided to inform Church Mutual of what was occurring with respect to the roof of the Church, Metro Christian was claiming that it needed an entire new roof costing in excess of $350,000.  SOF  ¶¶62-65 & 68.  However, Metro Christian even admits that the repair bid on which it relies is not just for damage that occurred on February 28, 2017, as well as that its contractor did not determine when and how the damage occurred that its estimate purports to address.  SOF ¶¶69-70.

The present matter is virtually identical to the *Pleasant Green* case, where identical policy provisions were considered with respect to the insured's failure to provide timely notice of a loss when it occurred, which prejudiced the insurer by precluding it from having "the opportunity to inspect the property and make any repairs that were needed to prevent further spreading and damage."  *Pleasant Green Missionary Baptist Church*, 2016 WL 4396169 at *5.  Specifically, this Court held that the policy was void because the insured breached its duties when it saw a problem and realized

14

something had to be done, but neither provided prompt notice of the loss or damage, nor took reasonable steps in an effort to prevent further damage. *Id*. at *6.

Similarly to *Pleasant Green*, in the present matter, Metro Christian was aware of serious problems involving the roof, leaks, and water damage for a period of time of over ten years from August 2006 until a claim was reported with an alleged date of loss of February 28, 2017. Metro Christian admits that it failed to provide Church Mutual with reasonable notice of the roof leaks and interior moisture damage, which lack of timely notice extremely prejudiced Church Mutual.

As a result of this failure to provide timely notice in violation of the policy, Church Mutual suffered prejudice because it lacked knowledge of the losses and damage and had no opportunity to take care of the problems and no ability to decide whether to stay on the risk. If Church Mutual had been timely notified of the claimed storm damage to the roof, it could have investigated and inspected the roof and determined the extent of any alleged storm damage. If there was covered storm damage, Church Mutual could have had its representatives, including adjusters and engineers, determine the cause of the damage, the extent of the damage and the scope of necessary repairs and then issued payment so that the proper repairs could have been performed by qualified contractors. As no notice was provided to Church Mutual, it was severely prejudiced by not being given an opportunity to make such determinations. Instead, Metro Christian concealed the condition of the roof from Church Mutual until it allegedly became so bad that an entire new roof is required.

15

Under these circumstances, it is undisputed that reasonable persons would conclude that Metro Christian failed to give notice to Church Mutual within a reasonable time, which failures prejudiced Church Mutual.  Thus, there is no coverage under the policy for Metro Christian's claimed damages.[2]

**B.   Metro Christian failed to cooperate with Church Mutual's investigation by failing to provide requested documents and records.**

Pursuant to its policy, Metro Christian was obligated to cooperate with Church Mutual's investigation, including permitting Church Mutual to inspect its books and records and providing documents and information requested by Church Mutual as part of its investigation.  SOF ¶89.  However, because Metro Christian breached the policy by failing to cooperate and failing to produce requested documents and records, there is no coverage under the policy.

Under Missouri law, cooperation clauses, such as the one contained in Metro Christian's policy, are enforceable and an insured forfeits coverage by failing to comply. *Wiles v. Capitol Indem. Corp.*, 215 F.Supp.2d 1029, 1031 (E.D. Mo. 2001) (*citing Riffe v. Peeler*, 684 S.W.2d 539, 542 (Mo. Ct. App. 1984)).  An insured's failure to cooperate can

---

[2] Additionally, there is no coverage for Metro Christian's claimed damages because it failed to take all reasonable steps to protect the Church from further damage, as not only were the attempted repairs it performed prior to the claimed date of loss ineffective as set forth above, but between February 28, 2017 (the alleged date of loss) and May 10, 2017 (the date the claim was reported), Metro Christian did not make any repairs to the roof of the Church, even though the roof leaked continuously during that time.  SOF ¶¶30-32.  Due to Metro Christian's failures to act, Church Mutual has suffered prejudice as the cost of repairs, according to Metro Christian, is now in excess of $350,000.  SOF ¶¶62-65 & 68.

be determined as a matter of law at the summary judgment stage. *Id*. at 1032; *Pleasant Green Missionary Baptist Church*, 2016 WL 4396169 at \*4.

The purpose of a cooperation clause is to "enable the [insurance] company to possess itself of all knowledge, and all information as to other sources of knowledge, in regard to facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims." *Wiles*, 215 F.Supp.2d at 1031 (*quoting Wood v. Allstate Ins. Co*., 21 F.3d 741, 745 (7th Cir. 1994); *Claflin v. Commonwealth Ins. Co. of Boston, Mass*., 110 U.S. 81, 94-95 (1884)).

After establishing a material breach of the cooperation clause, the insurer is entitled to deny coverage to the insured under the terms of the policy as long as the insurer has not waived its right to assert the defense or is estopped from asserting it. *Id*. (*citing Hendrix v. Jones*, 580 S.W.2d 740, 742 (Mo. banc 1979)). Furthermore, the insurer "must prove (1) the existence of substantial prejudice and (2) the exercise of reasonable diligence to secure the insured's cooperation before it can deny coverage because of breach of a cooperation clause." *Id*. (*quoting Hayes v. United Fire & Casualty Co*., 3 S.W.3d 853, 857 (Mo. Ct. App. 1999)).

Beginning with its acknowledgement letter, Church Mutual requested that Metro Christian provide photographs, estimates, an inventory of damaged personal property or other documentation related to this claim. SOF ¶44. Further, when the claim for interior water damage was denied on October 9, 2017, Church Mutual requested that Metro Christian provide any additional information it possessed that may cause Church Mutual to reconsider its coverage position. SOF ¶57. However, Metro Christian did not respond

to the October 9, 2017 letter until it sent the letter of representation nine months later, on July 9, 2018.  SOF ¶¶58-59.

After the Sworn Statement in Proof of Loss was provided, along with its request for Mr. Boldin to submit to an Examination Under Oath, Church Mutual repeatedly requested on October 25, 2018, December 10, 2018, December 19, 2018, January 2, 2019, and February 13, 2019, that Metro Christian produce certain documents and records at least five days prior to the Examination Under Oath.  SOF ¶¶71-82.  However, despite Church Mutual's repeated requests for documents and records as a crucial part of its investigation, Metro Christian did not provide any of the documents or records in support of its claim requested by Church Mutual.  SOF ¶¶84-85.  Mr. Boldin, on behalf of Metro Christian, even admitted this failure to cooperate during his Examination Under Oath.  SOF ¶85.  Further, Metro Christian did not permit Church Mutual to examine its books and records relevant to the claim. [3]  SOF ¶86.

Church Mutual exercised reasonable diligence through its numerous requests for documents and information from Metro Christian, and did not waive, is not estopped from asserting, and expressly reserved in the letters it sent to Metro Christian, its rights

---

[3] It is important to note that Missouri courts have consistently held that compulsory discovery in a lawsuit is no substitute for an insured's original cooperation.  *Roller v. American Modern Home Ins. Co.*, 484 S.W.3d 110, 117 (Mo. Ct. App. 2015) (*citing In re Am. Wood Concepts, LLC*, 2010 WL 1609690 at *5 (Bankr. W.D. Mo. 2010); *Union Ins. Co. of Providence*, 261 F.Supp.2d at 1153; *Wiles*, 215 F.Supp.2d at 1031-32).  This is because it should not be necessary for an insurer to bear the expense of a lawsuit to enforce its rights to discovery of information pertaining to a claim.  *Id.*  Consequently, it is wholly insufficient for Metro Christian to allege that any production of documents and information in discovery cures its prior failures to cooperate.

and defenses under the policy and the law.  SOF ¶¶71-82, 84 & 87.  Additionally, Church Mutual was substantially prejudiced in its investigation because it was precluded from possessing all knowledge and information as to other sources of knowledge and facts material to its rights to enable it to decide upon its obligations and protect itself against false claims.  SOF ¶88.

Consequently, due to Metro Christian's failures to produce requested documents and records, there is no coverage for any of Metro Christian's claimed damages.

### C.      Conclusion

No coverage exists for Metro Christian's damages because it failed to comply with the conditions of the policy by failing to cooperate, failing to provide prompt notice of the loss, failing to take all reasonable steps to protect the Church from further damage and failing to produce requested documents and records in support of the claim and this conduct by Metro Christian prejudiced Church Mutual's rights under the policy.   SOF ¶92.

## IV.    The damages claimed by Metro Christian are not covered by its policy with Church Mutual.

As set forth in the preceding sections, the policy is void and is there no coverage for Metro Christian because it committed material misrepresentations during the claim, as well as failed to cooperate.  However, even if Metro Christian's breaches of the policy were not fatal to its claim, which they are, there would still not be coverage for its alleged damages because such damages are excluded by the policy's exclusions and limitations.

A.      **Faulty, inadequate, or defective workmanship, repair, construction, materials or maintenance**

Church Mutual's policy with Metro Christian does not provide coverage because the damages are not related to any storms or a covered cause of loss, but rather are caused by or resulting from faulty, inadequate, or defective workmanship, repair, construction, materials or maintenance.  SOF ¶89.

As part of its investigation, Church Mutual hired an engineer, Joseph Kraus of EFI Global, to evaluate the roof of the Church and determine the cause and extent of roof damage. SOF ¶50.  Mr. Kraus determined that the original installation of the shingles included overdriven nails, as well as nails placed above the nail line on the shingles, that caused the shingles to be more susceptible to being uplifted by wind.  SOF ¶51.

Further, Mr. Boldin's testimony as Metro Christian's corporate representative confirmed that the problems with leaks had been persistent and ongoing since the new roof was installed in August 2006.  SOF ¶¶6-22.  Although Metro Christian would use what it referred to as "bandaids" and make temporary repairs, the leaks continued for years.  SOF ¶¶23-25.  Mr. Kraus' investigation confirmed that the leaks had been occurring in several locations in the roof over the past several years and patching repairs had been made from time to time throughout.  SOF ¶53.

Only when the "bandaids" and "patching" were no longer working and it could no longer keep up with the leaks and repairs, did Metro Christian finally submit a claim to Church Mutual.  SOF ¶¶33-34.  Metro Christian now admits that not all of the claimed damage occurred on February 28, 2017 and that there is no way to determine what

damage occurred on that date, as opposed to any other prior date.   SOF¶¶35 & 37. Importantly, Metro Christian confirmed that its contractor, Alltex General Contracting, LLC, did not determine when and how the damage occurred, and that its estimate is not just for damage that occurred on February 28, 2017.  SOF ¶¶69-70.

Mr. Boldin repeatedly confirmed throughout his Examination Under Oath that rather than being from a single occurrence, the damages being claimed were the result of continuous problems at the Church that Metro Christian had attempted to address (unsuccessfully) on its own for years.  SOF ¶83.  Thus, as the leaks and resulting interior water damage were not the result of a storm created opening or opening from any other covered cause of loss, there is no coverage.  SOF ¶56.

**B.     Wear, tear, decay, deterioration, settling, cracking, shrinking or expansion**

Pursuant to Metro Christian's policy with Church Mutual, there is no coverage for loss or damage caused by or resulting from wear and tear, decay, deterioration, settling, cracking, shrinking or expansion.  SOF ¶89.  As part of his investigation, Mr. Kraus determined that the roof suffered from age related deterioration of the flat roof and wall/roof flashings, and that there were deteriorated sealant application repairs above where the leaks were being observed.[4]  SOF ¶¶52 & 54-55.  Consequently, there is no coverage for Metro Christian's claimed damages.

---

[4] This deterioration of prior repairs also constitutes evidence of faulty, inadequate or defective repairs and maintenance.

21

### C.    Continuous or repeated seepage or leakage of water

The policy also does not provide coverage for loss or damage caused by or resulting from the continuous or repeated seepage or leakage of water that occurs over a period of 14 days.  SOF ¶89.  After the claimed date of loss, February 28, 2017, but before the claim was reported on May 10, 2017, Metro Christian confirmed that the roof leaked continuously during that time.  SOF ¶¶31-32.  Thus, there is no coverage for Metro Christian's claimed damages.

### D.    Conclusion

The damages claimed by Metro Christian are not covered because the damages are not related to any storms or a covered cause of loss, but instead are attributable to wear, tear, decay, deterioration, settling, cracking, shrinking or expansion, continuous or repeated seepage or leakage of water, and/or faulty, inadequate or defective workmanship, repair, construction, materials or maintenance.  SOF ¶90.

## V.    Metro Christian's claims for breach of contract and vexatious refusal fail as a matter of law.

In its responsive pleading, Metro Christian initially asserted three counterclaims against CM Vantage: breach of contract, breach of common law good faith and fair dealing, and vexatious refusal to pay.  *See* Doc. #5, Metro Christian's Answer to Plaintiff's Complaint for Declaratory Judgment and Counter-Claims.  In response to Church Mutual's Motion to Dismiss, Count II for breach of common law good faith and fair dealing was dismissed.  *See* Doc. #9, Notice of Voluntary Dismissal; Doc. #10, Order Dismissing Count II.  Metro Christian thus possesses two remaining counterclaims:

breach of contract and vexatious refusal.   However, neither of its counterclaims can preclude entry of summary judgment in Church Mutual's favor on its Complaint and summary judgment should also be entered in Church Mutual's favor on Metro Christian's counterclaims.

Metro Christian's first counterclaim for breach of contract asserts virtually identical issues to those contained in Church Mutual's Complaint.  *See* Doc. #1, CM Vantage's Complaint for Declaratory Judgment.   Thus, for the same reasons that summary judgment should be entered in Church Mutual's favor on its Complaint, as set forth in the preceding sections, summary judgment should also be entered in Church Mutual's favor on Metro Christian's counterclaim for breach of contract.

Additionally, summary judgment should also be entered in Church Mutual's favor on Metro Christian's remaining counterclaim for vexatious refusal to pay because such a claim is not viable in the absence of a breach of contract by the insurer.  As set forth above, Metro Christian's breach of contact counterclaim fails as a matter of law; consequently, its vexatious refusal to pay counterclaim necessarily fails as well.

A vexatious refusal to pay claim can only be sustained where an insurer refuses to pay a claim "without reasonable cause or excuse." Mo. Ann. Stat. §375.420.  Under the vexatious refusal to pay statute, damages are only to be awarded "in addition to" damages awarded on a judgment, and are calculated based on that award.  *Id*.  As a vexatious refusal to pay claim is derivative of an insured's claim for its loss, it must fail where the insured's claim to recover for its loss fails.  *State ex rel. U. S. Fid. & Guar. Co. v. Walsh*, 540 S.W.2d 137, 141 (Mo. Ct. App. 1976); Mo. Ann. Stat. §375.420.  Thus, where the

insured's breach of contract claim fails, the vexatious refusal to pay claim must also fail. *Grobe v. Vantage Credit Union*, 679 F.Supp.2d 1020, 1034 (E.D. Mo. 2010) ("[The insured's] breach of contract claim fails to state a claim upon which relief can be granted. It follows that [the insured's] claim for vexatious refusal to pay must also fail.  There is no liability under the policy as a matter of law, and this is a meritorious defense for vexatious refusal to pay.") (*citing Groves v. State Farm Mutual Auto. Ins. Co.*, 540 S.W.2d 39, 42 (Mo. 1976)).

Obviously, an insurer cannot be "vexatious" for refusing to pay sums which it did not owe.  *See Bd. of Educ. of City of St. Louis ex. rel Bertolino v. Vince Kelly Construction*, 963 S.W.2d 331, 335 (Mo. Ct. App. 1997) (Conclusion that an insurer was not required to pay an insured "rebuts any contention that it did not have a meritorious defense for refusing to pay" and precludes a vexatious refusal to pay claim).  Therefore, where nothing is due under the policy, there can be no award for damages under the vexatious refusal to pay statute.  *See Walsh*, 540 S.W.2d at 141 (Where "no amount was due under the [policy]" there was no loss and "therefore nothing which vexatious damages and attorneys' fees can be made in 'addition to'").

A similar situation was presented in *Nephrite*, where because summary judgment was granted in favor of the insurer on its claims that the insured made material misrepresentations in the claim and failed to cooperate, this Court also granted summary judgment in favor of the insurer on the insured's counterclaims for declaratory judgment, breach of contract and vexatious refusal to pay.  *Nephrite Fund 1, LLC*, 2020 WL 805848 at *14.

24

For these reasons, summary judgment should also be entered in favor of Church Mutual on Metro Christian's counterclaims for breach of contract and vexatious refusal.

CONCLUSION

For all the reasons stated herein, as well as in Church Mutual's Motion for Summary Judgment and Statement of Uncontroverted Material Facts, summary judgment should be entered in Church Mutual's favor finding that: (1) there is no coverage and the policy is void because Metro Christian committed material misrepresentations in the claim by making demand for replacement cost sums claiming a date of loss of February 28, 2017 when the damages occurred over of period of time exceeding ten years and when the policy only provides actual cash value coverage; (2) there is no coverage because Metro Christian breached the policy by failing to cooperate by failing to provide prompt notice of the loss, failing to take all reasonable steps to protect the Church from further damage, and failing to produce requested documents and records in support of the claim; (3) the policy does not provide coverage for Metro Christian's claimed damages because, rather than being attributable to a covered cause of loss, the damages are attributable to wear, tear, decay, deterioration, settling, cracking, shrinking or expansion, continuous or repeated seepage or leakage of water, and/or faulty, inadequate or defective workmanship, repair, construction, materials or maintenance; and (4) Metro Christian's counterclaims for breach of contract and vexatious refusal to pay both fail as a matter of law.

Respectfully submitted,


/s/ Robert W. Cockerham
Robert W. Cockerham #31984
COCKERHAM & ASSOCIATES, L.L.C.
10803 Olive Blvd.
St. Louis, MO 63141
314-621-3900
Fax:  314-621-3903
rcockerham@cockerhamlaw.com

Attorneys for Plaintiff Church Mutual
Insurance Company


## **CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2020, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing service on all parties.


/s/ Robert W. Cockerham