## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

CHURCH MUTUAL                  )
INSURANCE COMPANY,       )
                                  )
        Plaintiff,              )
                                  )
v.                                 )        Case No. 4:19-cv-00903-MTS
                                  )
THE METROPOLITAN CHRISTIAN   )
WORSHIP CENTER OF ST. LOUIS,    )
                                  )
        Defendant.            )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Church Mutual Insurance Company's Motion for Summary Judgment against Defendant The Metropolitan Christian Worship Center of St. Louis. The Motion is fully briefed and ready for adjudication. For the reasons stated herein, the Court will deny the Motion.

### I.    Background

In January 2016, Plaintiff Church Mutual Insurance Company issued an insurance policy to Defendant The Metropolitan Christian Worship Center of St. Louis covering its church building located in St. Louis, Missouri through January 2019. Doc. [29] ¶3. On May 10, 2017, Defendant submitted a claim to Plaintiff for wind damage to the property with a date of loss of February 28, 2017. Doc. [24-6]. Based on the assigned adjusting company's investigation and the policy details, Plaintiff issued payment to Defendant for the actual cash value of the "covered wind damage to the roof and gutters" in the amount of $20,209.39 on September 20, 2017.[1] Doc.

---

[1] According to the Plaintiff and its adjuster, the total replacement cost value of the covered damage was $29,822.45. Defendant's policy, however, provided only actual cash value coverage—meaning it excluded depreciation—and provided for a $1000 deductible. After subtracting the deductible and the non-recoverable depreciation, the actual cash value, according to Plaintiff, was $20,209.39. Doc. [29] ¶47.

[29] ¶¶45, 47.

About nine months later, in July 2018, Defendant, through counsel, sent Plaintiff a letter claiming that Plaintiff "woefully failed to properly investigate, evaluate and pay policy proceeds" to Defendant. Doc. [24-11]. In October 2018, Defendant submitted a Sworn Statement in Proof of Loss along with an estimate from a contractor that estimated the "reasonable cost of repair for the damages caused by the wind/hail event that occurred on or about February 28, 2017" to be $359,444.08. Doc. [29-1]. That estimate did not contain a figure reflecting depreciation or the actual cash value.

After investigating the facts and circumstances surrounding the loss and the claim, Plaintiff concluded there was no coverage for the damages Defendant claimed for three reasons. First, Plaintiff argues that the policy is void because Defendant made misrepresentations by presenting only a replacement cost amount and by representing that all the damage occurred on February 28, 2017. Doc. [29] ¶91. Second, Plaintiff argues that Defendant "failed to comply" with the conditions of the policy and "failed to cooperate and comply with its duties after a loss." Doc. [1] ¶¶32–34. Lastly, even if Defendant's actions did not void the policy, Plaintiff maintains the claimed damage was not related to any storm or a "Covered Cause of Loss." Doc. [1] ¶30.

Plaintiff brought this suit against Defendant seeking a declaratory judgment to determine the rights and obligations of the parties under the insurance policy and has moved for summary judgment on its declaratory judgment. Defendant has two remaining counterclaims against Plaintiff, breach of contract and vexatious refusal to pay. Defendant did not move for summary judgment and Plaintiff did not seek summary judgment on Defendant's counterclaims, though it points out that a ruling in favor of Plaintiff on the declaratory judgment would mean the counterclaims fail as a matter of law.

## II.   <u>Summary Judgment Standard</u>

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Id.* at 996; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"Only after the moving party fulfills its duty is the nonmoving party obliged to proffer evidence that contradicts the moving party's showing and that proves the existence of a genuine issue of material fact." *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (internal quotations omitted); *accord Leffall v. City of Elsberry, Mo.*, No. 4:15-cv-398 SPM, 2016 WL 2866422, at *2 (E.D. Mo. May 17, 2016) ("If the moving party meets this initial burden, the nonmoving party must then set forth affirmative evidence from which a jury might return a verdict in his or her favor."). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007).

## III.   <u>Analysis</u>

Plaintiff has put forward three independent reasons why it does not owe Defendant for the property damage Defendant claims: (1) material misrepresentations by the Defendant, (2) Defendant's failure to cooperate and comply with policy provisions, and (3) that the damage was

not from a covered cause of loss. The Court takes each argument in turn.

A.     **Alleged Misrepresentations**

Plaintiff argues that Defendant's policy is void because Defendant made misrepresentations of material fact regarding its claim. First, Plaintiff contends that Defendant made a misrepresentation when it provided only a replacement value of the alleged damage in its Sworn Statement in Proof of Loss since the policy would entitle Defendant only to an actual cash value. Second, Plaintiff maintains that Defendant made a misrepresentation when it submitted that all the claimed damage occurred on February 28, 2017.

Missouri law recognizes the validity of provisions in insurance contracts that void the policy in the event of misrepresentations of material fact. *See Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 346 (8th Cir. 2009) (citing *Shirkey v. Guarantee Trust Life & Ins. Co.*, 141 S.W.3d 62, 67 (Mo. Ct. App. 2004)). The policy here contained such a provision. Under the heading "CONCEALMENT, MISREPRESENTATION OR FRAUD," the policy provides that:

> "This Coverage Part is void in any case of fraud by you relating to it. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
>     1.  This Coverage Part;
>     2.  The Covered Property;
>     3.  Your interest in the Covered Property; or
>     4.  A claim under this Coverage Part.

Doc. [29] at 19.

Plaintiff maintains that "even if the representations are innocently made, the insurer may still void the insurance policy."[2] That may be the case if the language within the policy so

---

[2] For that proposition, it cites a Missouri Supreme Court case that noted material representations made during an application for a life insurance policy, "if in fact untrue," can allow the insurance company to void the policy even if

provides, but here it does not. Missouri law accords the terms of an insurance policy "the meaning which would be attached by an ordinary person of average understanding." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). By a plain reading of the policy section, "intentionally" modifies both "conceal" and "misrepresent" and thus requires an *intentional* misrepresentation. *See, e.g.*, *United States v. Gumbs*, 964 F.3d 1340, 1347 (11th Cir. 2020) ("As a matter of grade-school grammar, the adverb 'forcibly' necessarily modifies each of the listed verbs that follows it."); *United States v. Godin*, 534 F.3d 51, 56 (1st Cir. 2008) (finding "knowingly," as an adverb, modified the verbs "transfers, possesses, or uses" in the phrase "knowingly transfers, possesses, or uses"); *In re Perkins*, 117 S.W.2d 686, 692 (Mo. Ct. App. 1938) (noting that "under a fair grammatical construction" the adverb "willfully" modifies both succeeding verbs "neglected" and "abandoned"); *see also Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 346 (8th Cir. 2009) (stating in regards to near identical policy language that the express terms of the policy allowed the insurer to void the policy "in the event of a false and material *intentional* representation as to any one of the four listed topics" (emphasis added)).[3]

Plaintiff has not provided sufficient evidence to show that Defendant intentionally made a misrepresentation when it provided a replacement value amount—with no actual cash value amount, which is what the policy covered—on its Sworn Statement in Proof of Loss. Irrespective

---

"the representations were innocently made." *Dixon v. Bus. Men's Assur. Co. of Am.*, 285 S.W.2d 619, 625 (Mo. banc 1955).

[3] In addition, "conceal" implies a level of intentionality. *See United States v. Baumgartner*, 581 F. App'x 522, 535 (6th Cir. 2014) (Clay, J., concurring in part and dissenting in part) (noting one conceals a fact if he or she "'prevents or hinders the discovery of something,' Black's Law Dictionary 282 (7th ed. 1999), or 'prevent[s] disclosure or recognition of' something, Webster's Third New Int'l Dictionary 469 (1993)."). Thus, it would be absurd for "intentionally" to modify "conceal" but not "misrepresent." *See Long v. United States*, 199 F.2d 717, 719 (4th Cir. 1952) ("it would be absurd to limit the modifying effect of 'forcibly' to the word 'assaults' since this is the only one of the succeeding verbs in which the use or threat of force is necessarily implied and as to which the use of the adverb adds nothing"). Since this section of the policy is, at best, uncertain regarding whether a misrepresentation must be intentionally done, the Court will construe it as requiring misrepresentations to be intentional in order to void the policy. *See Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 859 (Mo. Ct. App. 1999) ("Any ambiguity or uncertainty in an insurance policy must be resolved in favor of the insured.").

of intentionality, it is a stretch that Defendant's action was a misrepresentation at all. In the estimate attached to its Sworn Statement in Proof of Loss, Defendant plainly identified the amount it listed as the replacement cost. Multiple times it noted that the amount was the cost of repair, and it explicitly stated it was the cost to repair the damage with *new* materials. It then detailed the cost breakdown of the estimate and noted that the amount it provided, $359,444.08, was the "Replacement Cost Value." If the submittal of only the replacement cost was a misrepresentation, Plaintiff has pointed to no evidence in the record that Defendant made it intentionally. Indeed, it would be nonsensical to intentionally misrepresent something while also plainly noting, numerous times, that the information intentionally misrepresented was for a valuation the policy did not use.

Plaintiff also argues that Defendant misrepresented the date of loss as February 28, 2017 because, Plaintiff asserts, not all the damage occurred on that date. Defendant, through its expert, represented that the $359,444.08 worth of damage occurred "on or about" February 28, 2017 as the result of a "wind/hail event." Theodore Boldin, who oversees building maintenance for Defendant, testified that it had been raining around February 28th for "three or four or five days[.]" Doc. [24-1] at 57. He testified further that there was "a lot of wind and stuff" on February 28th and that there was "water and plaster falling" within the building that day. Doc. [24-1] at 55. In contrast, Plaintiff has evidence that tends to show all the damage to the church did *not* occur on or about February 28, 2017. On summary judgment, this Court cannot "weigh evidence" to determine which party is correct regarding a disputed fact. *Cottrell v. Am. Fam. Mut. Ins. Co., S.I.*, 930 F.3d 969, 972 (8th Cir. 2019). Thus, summary judgment on this ground is impermissible.

B.      **Alleged Failure to Cooperate**

Plaintiff also asserts that Defendant voided the insurance policy by failing to cooperate because it did not provide prompt notice of the loss or damage and it failed to produce requested documents and records.

1.   *Prompt Notice*

The policy at issue did not require Defendant to provide notice of a loss to Plaintiff within a specific timeframe. As a general rule, when a policy does not specify a deadline by which the insured must provide notice, the insured must give notice within a "reasonable time." *Travers v. Universal Fire & Cas. Ins. Co.*, 34 S.W.3d 156, 165 (Mo. Ct. App. 2000). Whether the insured provided notice within a "reasonable time" is a question of fact. Only "where all reasonable persons would conclude that notice or proof was not given or made within [a reasonable] time, under all the circumstances" does it then become a question of law for the court. *Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 14 (Mo. banc 1995).

Defendant claims that the storm that damaged the subject property occurred on or about February 28, 2017, and Defendant informed Plaintiff of this loss on May 10, 2017—roughly ten weeks later. Ten weeks, though not an insignificant amount of time, cannot be said to be an unreasonable amount of time as a matter of law. All reasonable persons would not conclude the notice Defendant provided to Plaintiff was unreasonable. Indeed, Plaintiff itself seemingly found the ten weeks a reasonable amount of time. Initially it paid over $20,000 to Defendant on this very claim, which it now maintains *all* reasonable persons would find was made within an unreasonable amount of time.[4] Plaintiff has not established that Defendant failed to provide

---

[4] In addition, an insurer may only bar recovery under a policy condition requiring the insured to give notice of loss if the insurer also demonstrates that it has been prejudiced. *E. Attucks Cmty. Hous., Inc. v. Old Republic Sur. Co.*, 114 S.W.3d 311, 326 (Mo. Ct. App. 2003). There is no indication in the record that Plaintiff initially argued it was prejudiced when it first accepted and paid on the claim.

7

prompt notice as a matter of law.

2. *Documents and Records*

Plaintiff next argues that Defendant breached the policy by failing to cooperate and failing to produce documents and records. The policy contains a cooperation clause that required Defendant to "[c]ooperate with [Plaintiff] in the investigation or settlement of the claim." Doc. [29] ¶89. A separate provision allowed Plaintiff to "examine and audit" Defendant's "books and records as they relate to this policy." *Id.* Cooperation clauses in an insurance policy are conditions subsequent that necessitate proof by the insurer of facts sufficient to relieve it of liability. *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 857 (Mo. Ct. App. 1999). Under Missouri law, "an insured's failure to comply with a cooperation clause supports an insurer's refusal to provide coverage when the insurer can show: (1) the insured materially breached the cooperation clause; (2) the insurer was substantially prejudiced as a result of the insured's breach; and (3) the insurer exercised reasonable diligence to secure the insured's cooperation. *Columbia Cas. Co. v. HIAR Holding, LLC*, 411 S.W.3d 258, 272 (Mo. banc 2013).

Defendant admits that it "did not permit [Plaintiff] to examine its books and records relevant to the claim." Doc. [29] ¶86. Plaintiff asserts it was "substantially prejudiced" due to Defendant's failure to cooperate because it "was precluded from possessing all knowledge and information as to other sources of knowledge and facts material to its rights to enable it to decide upon its obligations and protect itself against false claims." Doc. [29] ¶88. This alleged prejudice reads more like a tautology; Plaintiff's inability to possess all the information prejudiced it because it did not possess all the information.

Under Missouri law, the material breach of a cooperation clause does not necessarily cause substantial prejudice. *See Hendrix v. Jones*, 580 S.W.2d 740, 744 n.3 (Mo. banc 1979)

8

("[I]n showing a material breach the insurer will also be required to prove substantial prejudice to avoid liability under the policy."). In *Hendrix*, the Missouri Supreme Court "specifically rejected the notion of a per se rule" that an insured's noncooperation in and of itself causes substantial prejudice. *The Med. Protective Co. v. Bubenik*, No. 4:06-cv-01639 ERW, 2008 WL 382384, at *4 (E.D. Mo. Feb. 12, 2008) (rejecting argument that court should adopt per se rule that assertion of Fifth Amendment by insured constitutes prejudice to insurer).

Rather than a per se rule, determining whether an insured's violation of a cooperation clause caused substantial prejudice is "a highly fact-intensive inquiry." *Med. Protective Co. v. Bubenik*, No. 4:06-cv-01639 ERW, 2008 WL 5070042, at *28 (E.D. Mo. Nov. 21, 2008), *aff'd*, 594 F.3d 1047 (8th Cir. 2010). As such, it is "typically a question of fact for the fact-finder." *Sherman v. Mo. Pros. Mut.-Physicians Pro. Indem. Ass'n*, 599 S.W.3d 207, 219 (Mo. Ct. App. 2020); *accord Northrop Grumman Guidance & Elecs. Co., Inc. v. Emps. Ins. Co. of Wausau*, No. WD82615, 2020 WL 4458070, at *16–17 (Mo. Ct. App. Aug. 4, 2020), *transfer under Rule 83.02 denied*, (Aug. 27, 2020).

Plaintiff does not detail what, exactly, it sought that it did not receive. It speaks vaguely of "documents and records" and "books and records relevant to the claim." Doc. [24-2] ¶¶25, 26. By now, though, Plaintiff has had the benefit of discovery and could articulate what documents and information it lacked and, more importantly, how lacking them substantially prejudiced it. After all, if the lack of these documents and records substantially prejudiced it, it surely would have sought them in discovery.[5] The Court cannot rely "on speculation and conjecture" to find "prejudice as a matter of law." *Hendrix*, 580 S.W.2d at 743. Having not described with any

---

[5] To be sure, an insurance company's ability to discover the information in future litigation is no justification for failing to cooperate. *See, e.g.*, *Roller v. Am. Modern Home Ins. Co.*, 484 S.W.3d 110, 117 (Mo. Ct. App. 2015). Rather, the Court notes that Plaintiff, through discovery, has had the advantage of compulsory process and should be able to identify what information it previously lacked and how the lack of access to or knowledge of that information substantially prejudiced it. Plaintiff identified no such information or specific documents or records.

specificity the documents it did not receive or the information within them, Plaintiff failed to provide facts that show it was substantially prejudiced as a matter of law. *See, e.g.*, *Indian Harbor Ins. Co. v. Clarinet, LLC*, No. 4:07-cv-581MLM, 2009 WL 398492, at *12 (E.D. Mo. Feb. 17, 2009) (denying summary judgment under noncooperation clause noting insurer had not provided facts sufficient to meet its burden to establish that alleged noncooperation created substantial prejudice).

**C.      Allegedly Non-Covered Loss**

Lastly, Plaintiff maintains that the policy for Defendant did not provide coverage because "the damages [we]re not related to any storms or a covered loss . . . ." Doc. [23] at 20. That, though, expressly is contested by Defendant's expert, whose report provided an "estimate of the damages from a wind/hail event that occurred at the property on or about February 28, 2017." Doc. [29-1] ("[T]he reasonable cost of repair for the damages caused by the wind/hail event that occurred on or about February 28, 2017 is $359,444.08.").

While Plaintiff may have more detailed and thorough evidence supporting its theory on this point, the Court's task on summary judgment is not itself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Cottrell v. Am. Fam. Mut. Ins. Co., S.I.*, 930 F.3d 969, 972 (8th Cir. 2019) ("On summary judgment, the district court is not to weigh evidence or draw inferences. The material facts must be undisputed."). Since the parties' experts disagree, a fact finder should resolve whether a covered cause of loss caused the damage at issue.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, Doc. [22],

is **DENIED**.

Dated this 15th day of October, 2020

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE